J-S17001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: N.B.C., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: N.R., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3185 EDA 2023 |

Appeal from the Decree Entered November 21, 2023
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000344-2023

BEFORE: BOWES, J., KING, J., and BENDER, P.J.E.

MEMORANDUM BY BOWES, J.:                                    **FILED JULY 15, 2024**

N.R. ("Mother") appeals the November 21, 2023 decree involuntarily

terminating her parental rights to her daughter, N.B.C., born January 2022,

pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).[1]  Mother's court-

appointed appellate counsel, James J. DeMarco, Jr., Esquire, filed in this Court

an application to withdraw and a brief pursuant to ***Anders v. California***, 386

U.S. 738 (1967), asserting that Mother's appellate claims are frivolous.[2]  We

grant Attorney DeMarco's application to withdraw and affirm the termination

decree.

_____

[1]  In a separate decree, the trial court involuntarily terminated the parental rights of N.B.C.'s presumptive biological father, B.C.-P. ("Father") in addition to any unknown father pursuant to the same subsections.  Neither Father, nor any other individual, filed a notice of appeal.

[2]  ***Anders*** applies in the context of termination of parental rights appeals. ***See In re Adoption of B.G.S.***, 240 A.3d 658, 661 (Pa.Super. 2020).

We gather the factual and procedural history of this case from the certified record. The Philadelphia Department of Human Services ("DHS") first became involved with this family after receiving several reports of unsafe parenting in the home shortly after N.B.C.'s birth. *See* N.T., 11/21/23, at 13-15. These allegations included Mother becoming angry with N.B.C. for crying, leaving the child unattended, failing to properly feed and clothe the infant, neglecting to change diapers, and other basic care concerns. *See id*. On May 11, 2022, the trial court adjudicated then-five-month-old N.B.C. dependent and ordered that she remain in Mother's care and custody. Four days later, it granted DHS emergency protective custody of N.B.C. after receiving a report that Mother had left her unattended in a running shower. *See id*. at 8, 14. N.B.C. was placed in a pre-adoptive foster home, where she has remained throughout these proceedings. *See id*. at 28. On May 18, 2022, the court confirmed her placement at a shelter care hearing.

In connection with N.B.C.'s initial permanency goal of reunification, Mother was directed to, *inter alia*, attend parenting classes, engage in treatment for domestic violence and anger management, and address her diagnoses of bipolar disorder, attention deficit disorder ("ADD"), and attention deficit hyperactivity disorder ("ADHD") with therapy and medication management. *See id*. at 10, 15, 17, 25. Throughout the course of these proceedings, Mother's overall compliance and progress with respect to these goals was minimal. *See id*. at 24-25. Specifically, Mother failed to engage

with, or fully complete, any of her recommended courses of treatment. *See id*. at 15-25. Although Mother consistently participated in weekly supervised visits with N.B.C., she never progressed to unsupervised interactions due to ongoing concerns about N.B.C.'s safety in her care. *See id*. at 12-14.

On August 31, 2023, DHS filed a petition to involuntarily terminate Mother's parental rights pursuant to § 2511(a)(1), (2), (5), (8), and (b).[3] The trial court held a hearing on November 21, 2023, at which DHS adduced testimony from Taneesha Coker, the case manager from the Community Umbrella Agency ("CUA") assigned to this matter. DHS also introduced various documents relating to N.B.C.'s dependency. Mother was represented by Cureley Antell Cole, Esquire, and also testified on her own behalf.

The orphans' court filed a decree involuntarily terminating Mother's parental rights on the same day as the hearing. Although represented by Attorney Cole, Mother timely filed a *pro se* notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P.

---

[3] While the record is silent concerning the appointment of legal interest counsel as contemplated pursuant to 23 Pa.C.S. § 2313(a), Nghi Duong Vo, Esquire, served as N.B.C.'s guardian *ad litem* during the November 21, 2023 termination hearing and advocated in his best interests. Insofar as N.B.C. was approximately twenty-two months old at the time of these proceedings, we observe no structural defect in the court's failure to expressly appoint legal counsel pursuant to § 2313(a). *See In re T.S.*, 192 A.3d 1080, 1092-93 (Pa. 2018) (holding that "if the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal," then the mandate of § 2313(a) "is satisfied where the court has appointed an attorney-guardian *ad litem* who represents the child's best interests during such proceedings.").

1925(a)(2)(i) and (b).[4]  The trial court did not immediately tender a response to these filings.

On January 31, 2024, this Court ordered Attorney Cole to file an amended concise statement.  After Attorney Cole did not respond to this directive, we again ordered him to file and serve an amended concise statement, or show alternative cause regarding his apparent abandonment of his client.  Attorney Cole timely complied on March 1, 2024, and the trial court submitted a Rule 1925(a)(2)(ii) memorandum the same day.

Four days after serving the amended Rule 1925 statement, Attorney Cole submitted a petition to withdraw as Mother's counsel in this Court due to an intractable breakdown in the attorney-client relationship.  *See* Motion to Withdraw, 3/5/24, at ¶¶ 1-6.  We directed the trial court to hold a hearing regarding Attorney Cole's request to withdraw, and on March 20, 2024, the trial court submitted a response that permitted Attorney Cole to withdraw and appointed Attorney DeMarco to serve as Mother's replacement appellate counsel.

As noted above, Attorney DeMarco subsequently filed in this Court an application to withdraw along with a brief pursuant to the framework provided by ***Anders***.  Therefore, we will begin our review of the case *sub judice* by

---

[4]  Pursuant to Superior Court Operating Procedure § 65.24 concerning hybrid representation, "[a] *pro se* notice of appeal received from the trial court shall be docketed, even in instances where the *pro se* [appellant] was represented by counsel in the trial court."

assessing counsel's petition to withdraw and accompanying brief. ***See In re Adoption of B.G.S.***, 240 A.3d 658, 661 (Pa.Super. 2020) ("When faced with a purported ***Anders*** brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.").

In order to successfully withdraw pursuant to ***Anders***, counsel must: (1) petition the court for leave to withdraw and aver that, after making a conscientious examination of the record, he has determined that an appeal would be frivolous; (2) furnish a copy of the ***Anders*** brief to the appellant; and (3) advise the appellant that they have the right to retain private counsel or bring additional arguments to the court's attention. ***Id***. To confirm client notification has occurred, counsel must provide a copy of the letter advising the appellant of their rights in conformity with ***Commonwealth v. Millisock***, 873 A.2d 748, 752 (Pa.Super. 2005). ***See B.G.S.***, 240 A.3d at 661.

Our Supreme Court has also set forth substantive requirements for counsel's ***Anders*** brief, which must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes would arguably support the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. ***Id***. (citing ***Commonwealth v. Santiago***, 602 Pa. 159, 178-79, 978 A.2d 349, 361 (Pa. 2009)). Therefore, a fully compliant ***Anders*** brief should "articulate the

relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous." *Id*.

Attorney DeMarco complied with the procedural prerequisites of *Anders* and *Millisock* as well as the substantive requirements of *Santiago*. Counsel attached to the petition to withdraw a *Millisock* letter that advised Mother of her right to retain alternative private representation or raise supplemental arguments on her own, and he served Mother with a copy of the *Anders* brief explaining why the appeal is frivolous. *See* Application to Withdraw, 4/17/24, at Exhibit A; Anders brief at 17-25. As to the substantive components, the *Anders* brief provided an adequate summary of the factual and procedural history of this matter with citations to the certified record. *See id*. at 9-12. Furthermore, the brief contained a discussion of governing Pennsylvania law as applied to the particular circumstances of the instant case. *See id*. at 17-25. While counsel referred to lines of argument that might support Mother's challenges to the trial court's findings pursuant to § 2511(a) and (b), he ultimately explained that these potential points of contention are frivolous in light of the evidence supporting the trial court's termination decree. *See id*.

Accordingly, we proceed to review the merits of the issues outlined in Attorney DeMarco's brief while conducting "an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." *B.G.S.*, 240 A.3d at 662 (quoting *Commonwealth v. Flowers*, 113 A.3d 1246, 1250 (Pa.Super. 2015)). In particular, we focus upon the

issues identified in the **Anders** brief, *i.e.*, that the certified record did not support the trial court's decision to terminate Mother's parental rights.

Our standard of review in this context is well-established:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

**Interest of M.E.**, 283 A.3d 820, 829-30 (Pa.Super. 2022) (cleaned up).

The involuntary termination of parental rights is governed by 23 Pa.C.S. § 2511, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. **Id.**

at 830; *see also* 23 Pa.C.S. § 2511(a)(1)-(11). Termination is proper when the moving party proves grounds for termination under any subsection of § 2511(a), as well as § 2511(b). *See In re N.A.M.*, 33 A.3d 95, 100 (Pa. Super. 2011) (stating that "[w]e must agree with the trial court's decision as to only one subsection of ... § 2511(a) in order to affirm the termination of parental rights").

Our analysis in this case will focus upon § 2511(a)(8) and (b), which provides as follows:

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
>> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.
>
> . . . .
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(8), (b).

In order to satisfy § 2511(a)(8), the petitioner must prove that: (1) the child has been removed from the parent's care for at least twelve months; (2) the conditions which led to the removal or placement still exist; and (3) termination of parental rights would best serve the needs and welfare of the child. *See In re Adoption of J.N.M.*, 177 A.3d 937, 943 (Pa.Super. 2018). Section 2511(a)(8) does not necessitate an evaluation of a parent's willingness or ability to remedy the conditions that led to the removal of the child. *See In re M.A.B.*, 166 A.3d 434, 446 (Pa.Super. 2017). Rather, our inquiry is focused upon whether the at-issue "conditions" have been "remedied" such that "reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa.Super. 2009). Our precedent also recognizes "that a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parenting responsibilities. We cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." *Id*. at 11-12 (internal citations and quotation marks omitted).

Finally, this Court has explained that,

> while both [§] 2511(a)(8) and [§] 2511(b) direct us to evaluate the "needs and welfare of the child," we are required to resolve the analysis relative to [§] 2511(a)(8), prior to addressing the "needs and welfare" of [the child], as proscribed by [§] 2511(b); as such, they are distinct in that we must address [§] 2511(a) before reaching [§] 2511(b).

*In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa.Super. 2008) (*en banc*).

We will begin by reviewing the trial court's findings pursuant to § 2511(a)(8). Initially, there is no dispute that N.B.C. had been removed from Mother's care for eighteen months at the time of the termination hearing, *i.e.*, from May 2022 through November 2023. Thus, the first prong of § 2511(a)(8) is satisfied in the instant case.

Turning to the second element of § 2511(a)(8), the trial court found that "Mother has not actively engaged in her single case plan objectives" and "failed to avail herself of the services provided throughout the entirety of the case." Trial Court Opinion, 3/1/24, at 1-2; *see also* N.T., 11/21/23, at 60-61 (noting that "the conditions" that led to N.B.C.'s removal from Mother's care continued to exist at the time of the termination hearing). For the reasons that follow, we agree.

At the termination hearing, DHS largely relied upon the testimony of Ms. Coker, the CUA caseworker, to detail the history of Mother's case. According to Ms. Coker, Mother had never participated in any in-person meetings with CUA or DHS to discuss her permanency plan objectives. *See* N.T., 11/21/23, at 9-10. Ms. Coker also reported that Mother refused to acknowledge her issues with anger, domestic violence, and mental health diagnoses. *See id*. at 15-16 ("[S]he doesn't think that she has anger issues. She doesn't think that she has mental health concerns."). Due to her to ongoing intransigence, violent outbursts, and aggressive behavior, Mother had been discharged from mental health treatment services offered by Catholic Social Services, Forget

Me Not, and Carson Valley. *See id*. at 15, 21-24. Ms. Coker also averred that Mother consistently refused to take the medications prescribed by her treating physicians. *See id*. at 17. At the time of the termination hearing, Ms. Coker reported that Mother had not re-enrolled in treatment following her unsuccessful discharge from Carson Valley in June 2023. *See id*. at 17. Along similar lines, Ms. Coker testified that Mother did not successfully complete parenting classes or anger management treatment. *See id*. at 21-22. Overall, Ms. Coker opined that Mother had been "minimally compliant" with her reunification objectives and had made "[n]o progress" towards alleviating the underlying reasons for N.B.C.'s removal. *Id*. at 25.

Mother largely corroborated Ms. Coker's testimony that Mother did not appreciate the gravity of her mental health problems or unaddressed issues with anger. *See id*. at 45-52. Her only substantive point of disagreement with Ms. Coker's account was regarding whether she had completed her parenting classes by submitting a final project. *See id*. at 45-46. She admitted that she had voluntarily discontinued mental health treatment, medication management, and anger management classes. *See id*. at 47-49. She also flatly refused to agree to submit to similar treatment in the future, even if it meant losing her parental rights to N.B.C. *See id*. at 51-52 ("I don't even have anger issues. That's the problem with everybody thinking that I do and I don't. I don't need pills. . . . I'm a normal person, bro."). Based upon the foregoing competent evidence, we discern no error in the trial court's

determination that the ongoing anger issues and mental health problems that led to N.B.C.'s removal from Mother continued to exist.

The third aspect of § 2511(a)(8) necessitates an inquiry into whether the termination of Mother's parental rights will best serve the needs and welfare of N.B.C. Here, the certified record supports the trial court's finding that it did. Trial Court Opinion, 3/1/24, at 2; **see also** N.T., 11/21/23, at 57-61.

Although Ms. Coker testified that Mother consistently participated in supervised visitations with N.B.C., she also averred that Mother failed to make any meaningful progress toward acquiring the necessary parenting skills. Ms. Coker described the prior incidents that resulted in N.B.C. coming into care when Mother left N.B.C. unattended in bed, outside of Mother's home, and in a running shower. **See** N.T.,11/21/23 at 8, 13-14. She explained that Mother's inability to properly care for the child had not improved as a result of the services received. Specifically, Ms. Coker detailed that Mother could not ensure N.B.C.'s safety in unsupervised settings and that she lacked the initiative and awareness to take care of N.B.C.'s basic needs. **See Id.** at 12. Ms. Coker explained, caseworkers have "to prompt [Mother] to do basic parental things like change her diaper, feed her, make sure, you know, she's safe." **Id**. at 14. Notwithstanding the fifteen months of services that Mother received to address her parenting deficiencies, she did not make any meaningful progress toward improving these skills and her persistent failings

continue to impact her daughter negatively. Thus, as highlighted by Ms. Coker's testimony, and as expounded upon *infra*, the termination of parental rights best serves the needs and welfare of N.B.C. Accordingly, the trial court did not abuse its discretion in finding that termination was warranted pursuant to § 2511(a)(8).

Since DHS established adequate grounds for termination pursuant to § 2511(a), we turn to § 2511(b), which requires that the court "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). Our Supreme Court has generally outlined this inquiry, as follows:

> [C]ourts should consider the matter from the child's perspective, placing her developmental, physical, and emotional needs and welfare above concerns for the parent.
>
> Accordingly, the determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis. We have observed the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved. Thus, the court must determine each child's specific needs.
>
> Moreover, the child's emotional needs and welfare include intangibles such as love, comfort, security, and stability. As further guidance, we have identified factors, *i.e.*, specific needs and aspects of the child's welfare, that trial courts must always consider. The courts must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents. And, if the child has any bond with the biological parent, the court must conduct an analysis of that bond, which is not always an easy task.

*Interest of K.T.*, 296 A.3d 1085, 1105-06 (Pa. 2023) (cleaned up).

The extent of the "bond-effect analysis necessarily depends on the circumstances of the particular case." ***In re Adoption of J.M.***, 991 A.2d 321, 324 (Pa.Super. 2010) (cleaned up). The trial court must "consider the totality of the circumstances when performing a needs and welfare analysis." ***M.E.***, 283 A.3d at 839 (cleaned up). Thus, it is "within the discretion of the trial court to prioritize the safety and security" of children "over their bonds with their parents. ***Id****.* We will not disturb such an assessment if the trial court's factual findings are supported by the record. ***Id****.*

With respect to the bonding assessment, Ms. Coker testified that there was no evidence of a mutual parental bond between N.B.C. and Mother. ***See*** N.T., 11/21/23, at 28. Specifically, Ms. Coker noted that N.B.C. viewed Mother largely as a merely "familiar individual." ***Id***. Given the absence of any affirmative evidence of a bond, it would be reasonable to conclude that no such bond existed between N.B.C. and Mother. ***See Matter of M.P.***, 204 A.3d 976, 984 (Pa.Super. 2019) ("Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists.").

In sharp contrast, Ms. Coker averred that N.B.C. is "very bonded" to her foster mother, who has been responsible for N.B.C.'s emotional and day-to-day needs for the majority of the child's life. ***See id***. at 26-28. Ms. Coker opined that N.B.C. would not suffer irreparable harm if Mother's parental rights were terminated, but simultaneously averred that N.B.C. would suffer lasting harm if she were to be removed from her pre-adoptive foster home.

*See id*. at 26-27 (testifying that it would be a "traumatic experience" if N.B.C. were to be removed from her foster placement).

Based upon the foregoing, our independent review confirms that Mother's potential claims challenging the sufficiency of the agency's evidence and the trial court's conclusions pursuant to § 2511(a)(8) and (b) are frivolous. Furthermore, our review of the certified record satisfies this Court that the record does not contain any non-frivolous issues overlooked by Attorney DeMarco. Thus, we grant counsel's petition to withdraw pursuant to *Anders* and we affirm the decree terminating Mother's parental rights.

Application to withdraw filed by James J. DeMarco, Jr., Esquire is granted. Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/15/2024